# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE L. ROBINSON, | Civil Action No. 13 - 684 |
| Petitioner, | |
| v. | District Judge David S. Cercone |
| | Magistrate Judge Lisa Pupo Lenihan |
| SUPERINTENDENT CAPOZZA and THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, | |
| Respondents. | |

## REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

For the reasons stated herein, the petition for writ of habeas corpus (ECF No. 1) should be dismissed as untimely and a certificate of appealability should be denied.

**II.  REPORT**

George L. Robinson ("Petitioner") has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his March 11, 2004 judgments of sentence in the Court of Common Pleas of Allegheny County at CC No. 200100244 and CC No. 200106570 for attempted homicide and other related offenses.  The relevant factual and procedural history for these two cases is set forth below.

**A.  Relevant Factual and Procedural History**

**1.  Pre-Trial/Trial**

On March 13, 2001, at CC No. 200100244, Petitioner was charged by criminal information with having committed one count each of Criminal Attempt (Homicide) with serious

bodily injury against victim, William Corbett ("Corbett"), Aggravated Assault of victim Corbett, and Firearms Not to be Carried Without a License.

Also on March 13, 2001, at CC No. 200106570, Petitioner was charged by criminal information with having committed one count each of Criminal Attempt (Homicide) with serious bodily injury against victim, William Corbett ("Corbett"), Aggravated Assault of victim Corbett, and Firearms Not to be Carried Without a License.

On December 9, 2003, Petitioner, represented by Attorney William Brennan, proceeded to a jury trial, the Honorable Donald E. Machen presiding. The Commonwealth was represented by Deputy District Attorney Bruce Beemer.

On December 10, 2003, Petitioner appeared before Judge Machen for a suppression hearing where the court denied relief.

Petitioner's two cases were joined for trial, and, on December 15, 2003, Petitioner was found guilty at CC No. 200106570 of Criminal Attempt (Homicide) with serious bodily injury, Aggravated Assault, and Firearms Not to be Carried Without a License; and found guilty at CC No. 200100244 of Criminal Attempt (Homicide) with serious bodily injury, Aggravated Assault, and Firearms Not to be Carried Without a License. (Resp. Exh. 3, Verdict Sheets.)[1]

On March 11, 2004, Petitioner appeared before Judge Machen for sentencing. At CC No. 200100244, Petitioner was sentenced to twenty (20) to forty (40) years of incarceration at Count One (1), Criminal Attempt (Homicide); Petitioner received no further penalty at the remaining counts. At CC No. 200106570, Petitioner was sentenced to twenty (20) to forty (40) years of incarceration at Count One (1), Criminal Attempt (Homicide), to run consecutive to that imposed

---

[1] Respondents' exhibits are docketed at ECF Nos. 12-1 through 12-10. They will be referred to herein by their exhibit number.

at CC No. 200100244; Petitioner received no further penalty at the remaining counts. (Resp. Exh.4, Sentencing Sheets.)

On March 17, 2004, Scotty Coffey, Esquire, was appointed to represent Petitioner. Petitioner, through Attorney Coffey, filed timely post-sentence motions on March 18, 2004, which were denied on May 17, 2004.

### 2. Direct Appeal

On June 11, 2004, Petitioner, through Attorney Coffey, filed a Notice of Appeal to the Pennsylvania Superior Court, docketed at 999 WDA 2004. (Resp. Exh. 6, Notice of Appeal.)

On June 22, 2004, Petitioner, through Attorney Coffey, filed a Concise Statement, and on July 27, Judge Machen issued the trial court's Opinion. (Resp. Exh. 7, Opinion.)

On September 7, 2004, Petitioner, through Attorney Coffey, filed his Brief for Appellant at 999 WDA 2004 and raised the following issues:

1. Did the trial court err in denying Appellant's motion to suppress the suggestive identification of appellant by victim Richard Milton?

2. Did the trial court err in denying Appellant's Post Sentencing Motions since the verdict was against the weight of the evidence?

On October 7, 2004, the Commonwealth, represented by Assistant District Attorney Karen Edwards, filed its Brief for Appellee. (Resp. Exh. 8, Commonwealth's Brief.)

On March 10, 2005, the Pennsylvania Superior Court affirmed Petitioner's conviction. (Resp. Exh. 9, Opinion.)

On April 1, 2005, Petitioner, through Attorney Coffey, filed a Petition for Allowance of Appeal (PAA) to the Pennsylvania Supreme Court, docketed at 135 WAL 2005. (Resp. Exh. 10, Docket Sheet.) The Commonwealth did not respond.

On August 10, 2005, the Pennsylvania Supreme Court denied Petitioner's PAA. (Resp. Exh.11, Order denying PAA.)

### 3. First PCRA Proceeding

On April 28, 2006, Petitioner, *pro se*, filed his Post-Conviction Relief Act (PCRA) Petition. (Resp. Exhs. 1 and 2, Docket Sheets.)

On June 19, 2006, Thomas Farrell, Esquire, was appointed to represent Petitioner. On April 5, 2007, Petitioner, through Attorney Farrell, filed an Amended PCRA Petition. (Resp. Exh. 12, Amended PCRA Petition.)

On June 21, 2007, Assistant District Attorney Ronald Wabby filed an Answer in response to Petitioner's Amended PCRA Petition. (Resp. Exh. 13, Commonwealth's Answer.)

On August 2, 2007, Attorney Farrell filed a Motion to Withdraw as Counsel as well as a No Merit Letter pursuant to Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988), and Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). (Resp. Exh. 14, Attorney Farrell's Motion.)

In his No Merit Letter, Attorney Farrell addressed the withdrawal of those claims pursued in the Amended PCRA Petition filed on April 5, 2007. Attorney Farrell stated,

> [T]here was a complaint that counsel gave ineffective assistance for failing to purposely request an alibi instruction. Such issue was raised in an amended PCRA petition for Petitioner. However, after review of the trial transcript and reading the Commonwealth's excellent answer, such issue has been withdrawn because a proper jury instruction was given (TT486). Therefore, a no merit letter is in order because, after review, there does not seem to be a viable issue that can be presented on Petitioner's behalf.

(Resp. Exh. 14, p.8.)

On September 19, 2007, Judge Machen granted Attorney Farrell's Motion to Withdraw and put Petitioner on notice that the court intended to dismiss the PCRA Petition without a hearing.

On October 17, 2007, Judge Machen issued an Order dismissing Petitioner's PCRA Petition. (Resp. Exh. 15, Court's Notice and Dismissal.)

On November 2, 2007, Petitioner filed a Notice of Appeal, appealing Judge Machen's October 17, 2007 Order dismissing his PCRA Petition. (Resp. Exh. 16, Notice of Appeal.) This Notice was not given a docketing number because Petitioner did not perfect his appeal. Specifically, on November 8, 2007, in response to his Notice of Appeal, the Allegheny County Clerk of Courts informed Petitioner that additional documents were required, and that his Notice of Appeal would not be forwarded to the Pennsylvania Superior Court until said documents were provided. (Resp. Exh. 17, Clerk's notice to Petitioner.) On November 28, 2007, in response to the Clerk of Court's request, Petitioner filed Transcripts. (Resp. Exh. 18, Application.) The criminal docket also indicates two instances of *pro se* correspondences, which occurred on April 8, 2008 and August 13, 2008, wherein the Clerk of Court mailed Petitioner a docket report. (Resp. Exh. 1, p.14, Docket Sheet.) No action was taken thereafter.

### 4. Second PCRA Proceeding

On September 16, 2008, Petitioner filed a second *pro se* PCRA Petition. (Resp. Exh. 19, PCRA Petition.)

Dated September 30, 2008, and filed on October 1, 2008, Judge Machen issued a Notice of Intent to Dismiss Petitioner's second PCRA Petition. In the Notice, the court stated that Petitioner's second PCRA Petition was untimely.

On October 28, 2008, Judge Machen issued a final Order dismissing Petitioner's second PCRA Petition, explaining that Petitioner's claims were non-cognizable and that the record belied Petitioner's assertions. (Resp. Exh. 20, Notice and Dismissal Order.)

On November 9, 2008, Petitioner filed a Notice of Appeal, docketed at 469 WDA 2009, appealing Judge Machen's October 28, 2008 Order dismissing Petitioner's second PCRA Petition. (Resp. Exh. 22, Notice of Appeal.)

On April 24, 2009, Judge Machen issued an Opinion in response to Petitioner's Notice of Appeal. (Resp. Exh. 23, Opinion.)

On August 5, 2009, docketed at 469 WDA 2009, Petitioner, *pro se*, filed a Brief for Appellant whereby he maintained that his due process rights were violated when the PCRA court denied restoration of his appeal rights and when he was denied his right to appeal his first PCRA Petition due to government interference. (Resp. Exh. 24, Brief.)

On August 18, 2009, by Memorandum Opinion docketed at 469 WDA 2009, the Pennsylvania Superior Court vacated the trial court's October 28, 2008 Order dismissing Petitioner's second PCRA Petition and remanded to the trial court so that the trial court could issue an order dismissing Petitioner's second PCRA Petition as premature.[2] (Resp. Exh. 26, Opinion.) The Superior Court also directed the lower court to forward Petitioner's Notice of Appeal of his first PCRA Petition to the Pennsylvania Superior Court, finding that the appeal was "still pending". Id.

---

[2] The court explained that Petitioner's second PCRA Petition should have been dismissed as premature because the appeal from the denial of Petitioner's first PCRA appeal was still pending.

In early April 2010, the Allegheny County Clerk of Court forwarded Petitioner's Notice of Appeal, as ordered by the Pennsylvania Superior Court in its Memorandum at 469 WDA 2009.

On April 19, 2010, the Pennsylvania Superior Court received the forwarded Notice of Appeal from the Allegheny County Clerk of Court. Once the Pennsylvania Superior Court received Petitioner's Notice of Appeal, the court issued Petitioner a docket number 628 WDA 2010, for his pending PCRA appeal. (Resp. Exh. 27.)

On April 22, 2010, docketed at 628 WDA 2010, the Pennsylvania Superior Court Prothonotary's Office sent Petitioner a Docketing Statement for completing and filing. (Resp. Exhs. 1, 2, and 27.)

On May 24, 2010, the Pennsylvania Superior Court issued an Order stating that Petitioner failed to timely file a required docketing statement. Petitioner was then directed to file the docketing statement with the Prothonotary by June 3, 2010. The Order also notified Petitioner that failure to comply would result in dismissal of his pending appeal. (Resp. Exh. 28, Order.)

On June 14, 2010, the Pennsylvania Superior Court issued an Order dismissing Petitioner's direct appeal of his first PCRA Petition for failure to file the required docketing statement (as previously ordered on May 24, 2010). (Resp. Exh. 29, Order.)

On October 2, 2010, Petitioner, through letter, informed the Pennsylvania Superior Court that he was not aware of an Order requiring him to file a docketing statement nor was he aware of an Order dismissing his appeal. Petitioner claimed that this was a mistake made by SCI-Pittsburgh or the Superior Court Prothonotary. (Resp. Exh. 30, Letter.)

On October 13, 2010, in construing Petitioner's October 2, 2010 letter as an "application for reconsideration of dismissal", the Pennsylvania Superior Court denied Petitioner's

application of reconsideration of the court's June 14, 2010 Order dismissing his appeal. (Resp. Exh. 31, Order.)

On November 15, 2010, the Pennsylvania Supreme Court received Petitioner's *pro se* Petition for Allowance of Appeal, docketed at 93 WM 2010. (Resp. Exh. 32, Docket Sheet; Resp. Exh. 33, Notice.)

On November 19, 2010, the Pennsylvania Supreme Court notified Petitioner that any petition for allowance of appeal regarding the Superior Court's June 14, 2010 Order should have been filed on or before July 14, 2010. The court then stated that when seeking the court's permission to file a petition late, the appropriate filing in such circumstances is a petition for allowance of appeal *nunc pro tunc*. (Resp. Exh. 34, Court's Notification.)

On December 13, 2010, Petitioner filed a "petition for leave to file an allowance of appeal *nunc pro tunc*." (Resp. Exh. 35, Petition.)

On May 17, 2011, the Pennsylvania Supreme Court denied Petitioner's *pro se* petition for leave to file an allowance of appeal *nunc pro tunc*. (Resp. Exh. 36, Order.)

On June 24, 2011, Petitioner filed a Motion for Reconsideration to the Pennsylvania Supreme Court, which was denied on September 7, 2011. (Resp. Exh. 37, Motion and Order.)

**5. Third PCRA Proceeding**

On February 14, 2012, Petitioner filed a third *pro se* PCRA Petition alleging that improper obstruction by government officials prevented him from filing an appeal.

On April 3, 2012, Brian W. Sichko, Esquire, was appointed to represent Petitioner.

On June 11, 2012, Petitioner, through Attorney Sichko, filed an Amended PCRA Petition. (Resp. Exh. 29, Amended PCRA Petition.)

On July 20, 2012, the Commonwealth filed an Answer to the PCRA Petition. (Resp. Exh. 40, Answer.)

On September 13, 2012, Petitioner's PCRA Petition was dismissed by Judge Machen for failure to raise a cognizable claim under the PCRA. Judge Machen also stated that the record belied Petitioner's assertions. (Resp. Exh. 41, Order.)

On September 28, 2012, Petitioner filed an extension of time to file a Notice of Appeal with the Pennsylvania Superior Court, docketed at 96 WDM 2012. (Resp. Exh. 42, Docket Sheet; Resp. Exh. 43, Request for Extension of Time.)

On October 2, 2012, the court denied Petitioner's request for an extension of time. (Resp. Exh. 44, Order.) It appears that Petitioner's request for extension of time was filed after the 30 day period in which he could timely file a Notice of Appeal appealing the trial court's dismissal of his third PCRA Petition.

### 6. Federal Habeas Corpus Proceeding

On May 13, 2013, Petitioner filed the instant habeas corpus petition raising the following claim:

> The Superior Court of Pa. sent petitioner's appeal docket sheet to the wrong institution, petitioner never received it in order to proceed with appeal and petitioner never received any court order dismissal from the Superior Court.

(ECF No. 1 at p.5, Habeas Petition.) Petitioner seeks reinstatement of his appeal rights. Respondents maintain that the habeas petition should be dismissed as untimely. (ECF No. 12, Answer.)

### B. Facts of the Crime

The facts of the crime (for both cases), as summarized by the Pennsylvania Superior Court on Petitioner's direct appeal, are as follows:

> On September 25, 2000, University of Pittsburgh van no. 630 was reported stolen. While walking to work at 2:45 a.m., Richard Milton was approached by a Pitt van. The driver stopped the vehicle and asked Mr. Milton for directions. Mr. Milton was in a position to observe the driver's left side profile during their brief conversation. Mr. Milton was shot once in the back and twice in his right arm as he turned to walk toward his place of employment. On the same morning, at approximately 3:20 a.m., [William] Corbett was approached by a Pitt van. The driver asked Mr. Corbett for directions, following which Mr. Corbett was shot from a distance of approximately five (5) feet.
>
> Later on September 25, 2000, the same day as the shootings, police received an anonymous tip by telephone alleging that Robinson had stolen the van and shot Milton and Corbett. Detectives generated a photo array that included Robinson's likeness, and took it to the hospital where Corbett was recovering from his injuries. Corbett identified the van and identified Robinson's photo as that of his assailant. When they showed the photos to Milton, who also was recovering in the hospital, he failed to identify anyone from the photo array. The following day, the police secured warrants for Robinson's arrest and a search of his home.
>
> Per a defense request, a line-up was arranged for December 18, 2000. At the line-up, Corbett identified Robinson. Milton, however, was unable to attend. Photos from the line-up, however, were arranged into a photo array and brought to Milton on December 28, 2000. At this time, Milton identified Robinson, but he asked to see a left profile photo, since that was what he had seen during a significant amount of the time he was exposed to Robinson. On February 5, 2001, police returned to Milton with the requested left profile photo array. Milton identified Robinson as the shooter.
>
> Pursuant to a defense omnibus pretrial motion, the court conducted a suppression hearing on December 10, 2003, following which it denied Robinson's motion. A jury trial followed later that month, at the close of which a jury found Robinson guilty of all charges. On March 11, 2004, the court sentenced Robinson to twenty to forty years' incarceration for each attempted homicide charge. With regard to the remaining counts, Robinson entered into a negotiated agreement with the Commonwealth under which he pleaded guilty to possession of controlled substances found on his person at the time of his arrest in return for the imposition of no further penalty. A timely post-sentencing motion was filed and denied . . . .

(ECF No. 12-3 at pp.30-32, Opinion) (internal citation to trial court's Opinion dated 7/26/04 omitted.)

**C.** **Time Period for Filing Federal Habeas Corpus Petitions**

This proceeding is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").[3] Pursuant to the AEDPA, Congress imposed a one-year limitations period applicable to state prisoners, which provides as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

The statute of limitations set out in § 2244(d)(1) must be applied on a claim-by-claim basis. Fielder v. Varner, 379 F.3d 113 (3d Cir. 2004), *cert denied*, 543 U.S. 1067 (2005). In analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year

---

[3] Because Petitioner filed his federal habeas petition after the effective date of the AEDPA, the Court must apply the standards set forth in the AEDPA to his claims for federal habeas relief. *See* Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000) (citing Lindh v. Murphy, 521 U.S. 320, 336 (1997)).

limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger date" for the one-year limitations period pursuant to section 2244(d)(1). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to section 2244(d)(2). Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented.

1. **Trigger Date**

As to the first inquiry in the instant case, the "trigger date" for AEDPA purposes is the date that Petitioner's judgment of sentence became final pursuant to section 2244(d)(1)(A).[4] Petitioner was sentenced on March 11, 2004. He timely appealed, and on March 10, 2005, the Pennsylvania Superior Court affirmed Petitioner's conviction (999 WDA 2004). The Pennsylvania Supreme Court denied Petitioner's PAA on August 10, 2005 (135 WAL 2005). Pursuant to Rule 13 of the Supreme Court of the United States, Petitioner then had 90 days to file a petition for a writ of certiorari, which he did not do. Therefore, his sentence became final for AEDPA purposes on November 8, 2005, and his one-year limitations period for filing a federal habeas corpus petition started to run the next day. As such, absent any tolling, Petitioner had until November 8, 2006 to file for federal habeas relief.

2. **Statutory Tolling**

As to the second inquiry, the one-year limitations period was tolled during the pendency of Petitioner's "properly filed" state post-conviction proceedings pursuant to section 2244(d)(2).

---

[4] Petitioner does not assert that there was an impediment to filing his habeas petition which was caused by state action, that his petition involves a right which was newly recognized by the United States Supreme Court, or that there are new facts which could not have been previously discovered. *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

One-hundred seventy (170) days of Petitioner's one-year limitations period elapsed before he filed his first PCRA petition on **April 28, 2006**, which tolled the statute of limitations until **November 19, 2007**, the last day Petitioner had to file a perfected Notice of Appeal from the dismissal of his PCRA petition by the trial court on **October 17, 2007**.[5] However, upon appealing the dismissal of his second PCRA petition, the Pennsylvania Superior Court (469 WDA 2009) found that Petitioner's appeal of his first PCRA petition was "still pending" and directed the Allegheny County Clerk of Court to forward Petitioner's Notice of Appeal to its Prothonotary's Office. The Pennsylvania Superior Court received the forwarded Notice of Appeal (628 WDA 2010) but eventually dismissed Petitioner's appeal on **June 14, 2010**, for his failure to file a docketing statement.

Following this Order, Petitioner submitted a letter on **October 2, 2010**, wherein he informed the Superior Court that he was not aware of an Order requiring him to file a docketing statement or aware of an Order dismissing his appeal. The Superior Court construed Petitioner's letter as an application for reconsideration of its June 24, 2010 dismissal and denied such application on **October 13, 2010**. On **November 19, 2010**, Petitioner filed a Petition for Allowance of Appeal (93 WM 2010), but was informed by the Pennsylvania Supreme Court that he should have filed a petition for leave to file a petition for allowance of appeal *nunc pro tunc* because his PAA should have been filed on or before July 14, 2010. His Petition for Leave to File an Allowance of Appeal *nunc pro tunc*, filed on **December 13, 2010**, was denied by the

---

[5] Because November 17, 2007 was a Saturday, Petitioner had until Monday November 19, 2007 to file his appeal.

Pennsylvania Supreme Court on **May 17, 2011**. Petitioner's **June 24, 2011** Motion for Reconsideration of the denial of that Order was denied on **September 7, 2011**.[6]

Following the conclusion of Petitioner's PCRA proceedings on **September 7, 2011**, one-hundred fifty-nine (159) days elapsed before Petitioner filed a third PCRA petition on **February 14, 2012**.[7] However, this petition was ultimately dismissed as untimely by the trial court on **September 13, 2012**, and his request for an extension of time to file an appeal of the trial court's decision was denied by the Superior Court on **October 2, 2012** (96 WDM 2012). Because Petitioner's third PCRA petition was deemed untimely, it was not "properly filed" pursuant to section 2244(d)(2), and, therefore, the time that it was pending did not toll any portion of Petitioner's one-year limitations period. *See* Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2).") (internal quotation omitted).

Assuming Petitioner's one-year limitations period was tolled during the entire pendency of his first and second PCRA proceedings, **April 28, 2006 to September 7, 2011**,[8] Petitioner had thirty-six days remaining, or until **October 13, 2011**, to file for federal habeas relief.[9]

---

[6] It is unnecessary for the Court to make a final determination as to whether statutory tolling applies to Petitioner's filings after the Superior Court's dismissal of his appeal on June 14, 2010, because even applying statutory tolling principles to these filings Petitioner's habeas petition is still untimely.

[7] September 8, 2011 to February 14, 2012 = 159 days.

[8] Respondents maintain that Petitioner is entitled to the benefit of tolling during this period of time.

[9] 170 days + 159 days = 329 days that elapsed. 365 days – 329 days = 36 days that remained.

Petitioner's habeas petition was filed on **May 13, 2013**, one year and seven months late. Therefore, it is untimely.[10]

3. **Equitable Tolling**

The one-year limitation period in § 2244(d) is a statute of limitations, not a jurisdictional bar, and may be equitably tolled. Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616, 618 (1998). "Equitable tolling is proper only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims. Mere excusable neglect is not sufficient." Id. at 618-19 (internal citations, quotations, and punctuations omitted).

As to the Court's third inquiry, Petitioner does not specifically argue for the applicability of equitable tolling. However, he does claim that the government interfered with his right to appeal because the Pennsylvania Superior Court "sent [P]etitioner's docket sheet to the wrong institution" and he "never received it in order to proceed with [his] appeal." (Habeas Petition, ECF No. 1 at p.5.) He also claims that he "never received any court order of dismissal from the Superior Court." Id.

It is unclear to which appeal Petitioner refers. However, to the extent his argument relates to the appeal of his first PCRA Petition that was dismissed by the trial court on October 17, 2007, this issue is not relevant because the Court has given Petitioner the benefit of tolling during this time period and his habeas petition is still untimely. *See*, FNS 6 and 7. Alternatively,

---

[10] Moreover, even if the Court were to toll the time during the pendency of Petitioner's third PCRA proceedings, his habeas petition would still be untimely as it would have had to have been filed by November 7, 2012, 36 days after October 2, 2012.

to the extent Petitioner's argument may relate to the Pennsylvania Superior Court's dismissal on June 14, 2010, for Petitioner's failure to file a docketing statement as directed, he fails to present extraordinary circumstances beyond his control that account for his failure to file a timely habeas petition.

In his state court PCRA proceedings, Petitioner alleged that the Superior Court prevented him from completing his PCRA appeal when it failed to send him a docketing statement and when it failed to send him the Order dismissing his appeal. Petitioner, however, does not state when he actually discovered that his appeal was dismissed, and it was not until fourteen (14) months after he filed his *pro se* Brief on August 5, 2009, which was his last correspondence with the Superior Court, to send a letter inquiring about the Order requiring him to file a docketing statement.

Furthermore, Petitioner has not explained why he waited 159 days (over five months) to file a third PCRA Petition after the Pennsylvania Supreme Court denied his Motion for Reconsideration on September 7, 2011. At that time, Petitioner still had time remaining to file for federal habeas relief, but he chose to pursue an untimely third PCRA Petition, that would not toll AEDPA's one-year limitations period, rather than file a federal habeas petition. Nevertheless, even tolling the time his third PCRA proceedings were pending, Petitioner's habeas petition would still be untimely because he waited almost seven month to file his habeas petition after the dismissal of his third PCRA Petition. This does not exemplify diligent conduct that is required for the application of equitable tolling, and the record does not indicate the presence of any extraordinary circumstances that prevented Petitioner from filing a timely habeas petition. As such, the requisite conditions for equitable tolling are not present in this case.

### D. Certificate of Appealability

A certificate of appealability should be denied because Petitioner has not made a substantial showing of the denial of a constitutional right or shown that jurists of reason would disagree that his habeas petition was untimely filed. *See*, *e.g.*, Slack v. McDaniel, 529 U.S. 473 (2000) (explaining standard for grant of a certificate of appealability where court does not address petition on the merits but on some procedural ground); Walker v. Government of the Virgin Islands, 230 F.3d 82, 89-90 (3d Cir. 2000).

### III. CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus (ECF No. 1) should be dismissed as untimely and a certificate of appealability should be denied.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: October 24, 2014

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge

cc: George L. Robinson
EU 2178
SCI Pittsburgh
P.O. Box 99991
Pittsburgh, PA 15233

*Via First Class Mail*

Counsel of Record
*Via CM/ECF Electronic Mail*